IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL ANGELO COLLAZO, )
    Petitioner, ) Civil Action No. 14-210 Erie
)
v. ) District Judge Barbara Rothstein
) Magistrate Judge Susan Paradise Baxter
TREVOR WINGARD, <u>et al.</u>, )
    Respondents. )

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Michael Angelo Collazo pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied on all claims.

**II.    REPORT**

    **A.    Relevant Background**[1]

On August 10, 2007, Collazo was charged in the Court of Common Pleas of Erie County with burglary, receiving stolen property, carrying a loaded weapon, and conspiracy to commit burglary. A.J. Adams, Esquire, was his defense counsel. Pursuant to a conditional plea agreement, Collazo waived his preliminary hearing and only the conspiracy charge was bound over for the court at criminal docket CP-25-3041-2007. Later that same month, the Commonwealth filed "allegations of delinquency" against Collazo in the court's juvenile docket at CP-25-JV-1101-2007, alleging that he committed the offenses

---

[1]    Respondents have filed hard copies of the transcripts and relevant state court records. The records are indexed and numbered 1 through 18 and are cited herein as "SCR No. ___ ." Also, Collazo attached as Exhibit A to his petition the September 13, 2013, Order that was issued by his trial court that denied his request for post-conviction relief. [ECF No. 2-1 at 2]. As Exhibit B to the petition, Collazo attached the decision issued by the Superior Court of Pennsylvania in which it affirmed the trial court's decision. <u>Commonwealth v. Collazo</u>, Nos. 1586 & 1587 WDA 2013, slip op. (Pa.Super.Ct. Apr. 4, 2014). [ECF No. 2-1 at 4-11].

1

of robbery, conspiracy to commit robbery, simple assault, theft by unlawful taking, and receiving stolen property. The offenses at issue at that docket stemmed from events that occurred a few days before Collazo's 18th birthday. Commonwealth v. Collazo, Nos. 1586 & 1587 WDA 2013, slip op. at 2.

In December 2007, the Commonwealth petitioned the juvenile court to transfer the offenses at CP-25-JV-1101-2007 to the court's criminal division to try Collazo as an adult. The court granted the Commonwealth's petition to transfer and on January 24, 2008, the Commonwealth filed those transferred charges at criminal docket CP-25-CR-3222-2007. Id. at 2.

On October 28, 2008, Collazo entered his plea before the Court of Common Pleas. He pled guilty to one count of conspiracy to commit burglary at criminal docket CP-25-3041-2007 and one count of conspiracy to commit robbery at criminal docket CP-25-CR-3222-2007. Id. at 3. Before he entered his plea, the prosecutor reviewed with Collazo the "Defendant's Statement of Rights" that he signed that day. In it, Collazo was expressly advised that for each of the counts for which he was pleading guilty the trial court could sentence him to a maximum term of ten years and that, therefore, "you could be looking at … twenty years [of] incarceration[.]" (Plea Hr'g Tr. at 7-8). Collazo stated that he understood the potential sentence that he faced. (Id. at 8). He then entered his guilty pleas. At the conclusion of his plea hearing, the trial court asked Collazo again if he understood the penalties he faced and Collazo replied that he did. (Id. at 11). After Collazo stated that his decision to plead was voluntary and that no one had threatened him in any way, the trial court accepted his pleas. (Id. at 12).

The Court of Common Pleas held Collazo's sentencing hearing on December 1, 2008. On the conspiracy to commit burglary count, it sentenced Collazo to a term of 36 to 108 months of imprisonment. The court sentenced Collazo to a consecutive term of incarceration of 42 to 108 months of imprisonment on the count of conspiracy to commit robbery, for a total aggregate sentence of 6 ½ to 18 years of imprisonment. Collazo, No. 1586 & 1587 WDA 2013, slip op. at 3.

On May 16, 2013, Collazo filed in the Court of Common Pleas a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 PA.CONS.STAT. § 9541 *et seq*. (SCR No. 3). The court appointed William J. Hathaway, Esquire, to represent him and Hathaway filed an amended PCRA motion. (SCR No. 7).

The Supreme Court has strictly limited the circumstances under which a guilty plea may be attacked on collateral review, noting: "It is well settled that a voluntary and intelligent plea of guilt made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)). "Indeed, 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.'" Id. (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). See also Tollett v. Henderson, 411 U.S. 258, 267-68 (1973). In an attempt to get around the limitation his guilty plea has on his availability to receive relief on collateral review, Collazo contended to the PCRA court that Attorney Adams provided him with ineffective assistance in violation of his Sixth Amendment rights and that, as a result, his pleas were not knowingly and intelligently entered in violation of his due process rights. Specifically, Collazo contended that Attorney Adams erroneously represented to him prior to the entering of his pleas that, given his lack of a prior record, he would receive a county-level sentence.

Collazo's PCRA claim was governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance under Strickland, Collazo has the burden

3

of proving that Attorney Adams's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" Burt v. Titlow, — U.S. —, 134 S.Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). See also Harrington v. Richter, 562 U.S. 86, 104 (2011) ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689).

Strickland also requires that Collazo demonstrate that he was prejudiced by Attorney Adams's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." Strickland, 466 U.S. at 694. The United States Court of Appeals for the Third Circuit explained:

> [The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" Jacobs v. Horn, 395 F.3d 92, 105 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). The likelihood of a different result must be substantial, not just conceivable. Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011).

The PCRA court held a hearing on Collazo's PCRA claim on September 12, 2013. Collazo testified to support his claim, and the Commonwealth called Attorney Adams to rebut it. Collazo testified that Attorney Adams told him that "because I had no prior record score I'm looking at a county

4

sentence if I take the plea." (PCRA Hr'g Tr. at 7). He further testified that it was his understanding that "with a county-level sentence you can't get more than 11 and a half to 23 months." (Id. at 8).

Attorney Adams's testimony contradicted Collazo's. By that point, almost five years had expired since Collazo's entered his pleas and Adams stated that he no longer had a clear recollection of his representation of Collazo. Adams further explained, however, that after having reviewed the relevant transcripts, he was sure that he did not advise Collazo that he would receive a certain sentence if he pleaded guilty. The following is an excerpt of Adams's questioning by the Commonwealth's counsel:

> A. … I was a first assistant public defender before our office was replaced by a new administration, and in that capacity it would be my responsibility to help with the newer attorneys that came into the office.
>
> And one of the things that I would do with all of them is go through a story that actually occurred in this very courtroom when President Judge Pfadt was in this courtroom where another attorney … actually promised a client that he would get a county sentence on a drug charge. And when Judge Pfadt did not give him a county sentence but gave him a state sentence, the attorney actually fainted in the courtroom.
>
> So the not comical but somewhat bizarre aspects of that incident I use to try to instill in the new lawyers that you never, ever, ever promise anything, that you're not in 100 percent control of.
>
> - - -
>
> Q. With regard to Mr. Collazo or any client, but particularly Mr. Collazo, if they are asking you to give your opinion as to what you think they would get, you know, for a sentence, what was your policy there? What would you tell them?
>
> A. As I would tell my younger staff attorneys, I would never promise an outcome. And in reviewing the transcript I noticed that one of the conspiracy counts that [Collazo] pled guilty to was the theft of firearms. And the idea that any attorney would anticipate a county sentence based upon conspiracy to – I think they broke into a shed and stole firearms – is ludicrous.
>
> Q. Even with no prior record?
>
> A. Obviously, because of the weapons and his young age it wouldn't matter.

5

> Q. Okay. All right. So then you don't specifically recall, but you know as a matter of your own practice that you would not have promised him what his sentence would have been?
>
> A. Clearly not.

(Id. at 25-27).[2]

On September 13, 2013, the Court of Common Pleas issued an order in which it denied Collazo's PCRA claim. It held that it credited Attorney Adams's PCRA testimony and not Collazo's. [ECF No. 2-1, Ex. A]. Collazo, through Attorney Hathaway, filed an appeal with the Superior Court and on April 4, 2014, the Superior Court issued its decision in which it affirmed the PCRA court's decision to deny relief. It held that the PCRA court's findings were supported by the record and that Collazo failed to demonstrate that Attorney Adams provided him with inaccurate sentencing information prior to the plea hearing. Therefore, there was no basis to conclude that Collazo's plea was not knowingly and voluntarily entered. Collazo, No. 1586 & 1587 WDA 2013, slip op. at 5-8.

After the Superior Court denied relief on his claim, Collazo raised it to this Court in a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. [ECF No. 2]. This statute provides that "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not cognizable. Id. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Collazo carries the burden of proving that he is entitled to the writ. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

---

[2] Adams's testimony was consistent the statements that Collazo made at his plea hearing in which he acknowledged that he understood that he faced a maximum sentence of 20 years' imprisonment.

Respondents filed their answer [ECF No. 14] and the relevant state court records. Collazo did not file a reply. See Local Rule 2254(E)(2) ("the petitioner may file a Reply (also known as "a Traverse") within 30 days of the date the respondent files its Answer.").

**B.     Discussion**

**1.     Standard of Review**

In describing the role of federal habeas proceedings, the Supreme Court observed:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which, among other things, amended 28 U.S.C. § 2254 to include a new standard of review of state court decisions. AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Pinholster, 563 U.S. at 181 (internal quotation marks and citations omitted). It is codified at § 2254(d) and provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Because the Superior Court adjudicated Collazo's claim on the merits, this Court's analysis of it is governed by AEDPA's standard of review. The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze it is governed by Strickland.

In addition, state court findings of fact have always been afforded considerable deference in federal habeas corpus cases filed by state inmates. As the Court of Appeals for the Third Circuit explained:

> It is a well-established principle of federal law that state trial judges deserve substantial deference.
>
>> Face to face with the living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth … how can we say he is wrong? We never saw the witnesses.

Nara v. Frank, 488 F.3d 187, 201 (3d Cir. 2007) (quoting United States v. Oregon Medical Society, 343 U.S. 326, 339 (1952), which was quoting Boyd v. Boyd, 169 N.E. 632 (N.Y. 1930)). AEDPA continues that substantial deference and requires that "a determination of a factual issue made by a State court *shall be presumed to be correct*. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added). See also Rice v. Collins, 546 U.S. 333, 338-39 (2005). This section of the federal habeas statute is of particular importance here because of the credibility and factual determinations the PCRA court made in this case following the hearing at which Collazo and Attorney Adams testified.

## 2. The Superior Court's Adjudication Was Not "An Unreasonable Determination of the Facts"

Collazo asserts that Attorney Adams told him that he would receive a county sentence if he pleaded guilty and that Adams's inaccurate advice invalidated his guilty pleas. Because the PCRA court's rejection of Collazo's factual allegations was central to the Superior Court's disposition of Collazo's claim, it makes sense for this Court to first review the merits of the claim under § 2254(d)(2) and § 2254(e)(1), which are the provisions of AEDPA applicable to claims that turn on issues of fact.[3]

Collazo contends that "the PCRA court erred in failing to credit" his testimony "given the absence of any definitive denial on the part of" Attorney Adams. [ECF No. 2 at 17]. It is understandable, however, that by the time Attorney Adams testified at the PCRA hearing he no longer had a clear recollection of his representation of Collazo, which had taken place almost five years earlier. Nevertheless, Adams did testify that he was sure that he did not advise Collazo that he would receive a specific sentence and the PCRA court credited his testimony and did not credit Collazo's contrary

---

[3] As an analytical matter, the interplay between § 2254(d)(2) and § 2254(e)(1) is not entirely clear. The Supreme Court has yet to specifically examine the relationship of these two sections of the federal habeas statute. Burt, 134 S.Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010) and stating "[w]e have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)[.] … For present purposes, it is enough to reiterate 'that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"). The courts of appeals have adopted various approaches. Brian R. Means, FEDERAL HABEAS MANUAL § 3:82, Relationship between § 2254(d)(2) and (e)(1) WestlawNext (database updated June 2015). The Court of Appeals for the Third Circuit has described the approach a federal habeas corpus court should take as follows:

> [A] federal court may wish to consider subsidiary challenges to individual fact-finding in the first instance applying the presumption of correctness as instructed by (e)(1). Then after deciding these challenges, the court will view the record under (d)(2) in light of its subsidiary decisions on the individual challenges. In other instances, a federal court could conclude that even if [the] petitioner prevailed on all of his individual factual challenges notwithstanding the (e)(1) presumption of their correctness, the remaining record might still uphold the state court's decision under the overarching standard of (d)(2). In that event, presumably the (d)(2) inquiry would come first.
>
> Whatever the order of inquiry, however, two points are paramount. First, both (d)(2) and (e)(1) express the same fundamental principle of deference to state court findings. **Second, before the writ can be granted, petitioner must show an unreasonable determination – under (d)(2) – in light of the entire record in the original state court trial.**

Lambert v. Blackwell, 387 F.3d 201, 236 n.19 (3d Cir. 2004) (emphasis added). See also Eley v. Erickson, 712 F.3d 837, 846 n.11 (3d Cir. 2013).

9

testimony. Under the circumstances here, this Court must defer to the PCRA court's factual determinations. That is because Collazo has not met his burden of rebutting by clear and convincing evidence the presumption of correctness that this Court must afford to them. 28 U.S.C. §2254(e)(1). Nor has he met his burden of demonstrating that the Superior Court's decision to deny his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).

### 3. The Superior Court's Adjudication Was Not "Contrary To" Strickland

The next inquiry for the Court is whether Collazo has met his burden of establishing that the Superior Court's adjudication of his claim was "contrary to" Strickland. In relevant part, "[t]he test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases[.]'" Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (quoting Brown v. Payton, 544 U.S. 133, 141 (2005), which cited Williams v. Taylor, 529 U.S. 362, 405 (2000) and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). The Superior Court applied the Strickland standard when it evaluated Collazo's claim, Collazo, No. 1586 & 1587 WDA 2013, slip op. 6,[4] and, therefore, its adjudication withstands review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

---

[4] Pennsylvania courts apply the Strickland standard when evaluating ineffective assistance of counsel claims. Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999). Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.

10

### 4. The Superior Court's Adjudication Was Not "An Unreasonable Application of" Strickland

The final inquiry for the Court is whether Collazo has established that the Superior Court's adjudication was an "unreasonable application of" Strickland. His burden here is also very difficult to meet. The Supreme Court held that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington, 562 U.S. at 102. The Supreme Court instructed that § 2254(d)(1)'s "unreasonable application" clause:

> preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further…. **As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.**

Id. at 102-03 (emphasis added). The Supreme Court also explained:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. [Id.] Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.**

Id. at 105 (parallel citations omitted) (emphasis added).

There is no basis for this Court to conclude that the Superior Court's adjudication was an "unreasonable application of" Strickland. Collazo has not established that the Superior Court's decision to deny this claim "was so lacking in justification that there was an error well understood and

11

comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

### C. Certificate of Appealability

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Collazo's claim should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties may seek review of this Report and Recommendation by the district court by filing objections within 14 days after service. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
April 7, 2016                 United States Magistrate Judge

cc: The Honorable Barbara Rothstein
United States District Judge, and

Notice by first-class mail to Collazo at his address of record[5]

---

[5] It appears that Collazo may no longer be located at his address of record (SCI Somerset). However, he has not provided the Court with his current address, notwithstanding the express instruction the Court gave to him at the beginning of this action that he is under a continuing obligation to notify the Court of any change of address. [ECF No. 4, 8/21/14 Order at 5-6].

13